Thank you, Your Honor. Good morning, and may it please the Court, the panel, and the United States Attorney General, Mr. Truman, and Mr. McAuliffe. The warrant period is supported by probable cause, and to a certain degree, the good faith exception applies for three reasons. First, the officers did obtain a warrant for the information, and that warrant has already been settled. A co-warrant is a probable cause under the law. Second, Section 2703 of the Federal Communications Act expressly authorizes the government to approve the information without a warrant. And third, it was objectively reasonable to believe that the warrantless collection of the cell site location information was authorized by binding appellate precedent under Davis. Before you proceed, I just wanted to clarify one thing with respect to the sealed information. We didn't receive any motion to seal, and I think the parties have been advised that as a result, because the courtroom is open and there's no motion to seal, that the sealed information may well be referred to. So I just wanted to put everyone on notice. Roberts. Okay. I was not intending to refer expressly to it, but I appreciate Your Honor's affirmation. Well, it may be that some of the questions were implicated. The government has no objection to us referring to the sealed portions of the affidavit. The government doesn't have an objection. I would not want to. My preference would be to stay away from it, if possible. My understanding is that the sealed portion is not really contested with respect to what's alleged in it. The question is really the inferences you could draw from it. But if the court feels compelled to address it, I would be happy to do so. Has opposing counsel seen the unredacted affidavit? Yes. I have seen it. Okay. Yes. So I know it, too. Okay. Please proceed. Well, I'd like to, so just to, so there are three independent grounds on which the good faith exception applies, and they show that the police conduct here was anything but reckless. The officers obtained a warrant when they didn't need to do so, and so exclusion wouldn't serve a deterrent purpose. So let me first start with Leon, if I may, before turning to 2703. Leon makes clear that where a search was conducted pursuant to a warrant, the good faith exception is the rule and not the exception. And that's true unless the affidavit is so lacking in indicia of probable cause that no reasonable officer would rely on it. This Court has put it another way as asking whether there's, quote, a colorable argument for probable cause or essentially whether reasonable jurists could disagree. Here they could. Here's what we know from the affidavit. We know that it was a family affair. We know that a family member was involved in the shooting. We know that more than one person was involved in the shooting. We know that the defendant lived with the daughter, and so it's reasonable to infer that the defendant was in a position to identify the victim. It's reasonable to infer that the defendant was mad at the victim. After all, the victim was prostituting the minor daughter while the defendant was living with her. And we also know that the daughter didn't want to return to L.A. after the shooting to live with her brother. Again, it's reasonable to infer based upon that information that the daughter, like the officers here, suspected that the brother was involved in the shooting. Can you leave out one important fact, though, that was in the affidavit, and that is that the individual identified there was located in San Francisco. That's right. And, in fact, employed in San Francisco in a specific location. That's right, Your Honor. One of the individuals was located in San Francisco, but the affidavit makes clear that there was more than one individual involved. And just because there's reason to suspect one individual and probable cause to believe that one individual was involved doesn't vitiate the fact that there are certainly reasonable grounds to believe that another person was involved. The affidavit makes quite clear that multiple persons were involved, and it's reasonable to infer based upon the affidavit that those persons were family members, and in particular the brother who lived with the daughter could identify the victim and had reason to be upset with the victim. Counsel, on the next to the last page of the affidavit, the affidavit recites, While searching the minor's phone, we discovered the cell phone numbers to her father, her mother, her older brother in L.A., and her younger brother who lives at the address. The older brother is Mr. Gilton here. Were those numbers stored in the phone, or was that part of the call-and-receive log on the phone? I don't know the answer to that. The record doesn't reflect that. My reading of the affidavit is that they were stored on the phone and that the officers targeted those particular individuals because at the time they suspected that family members were involved, but I can't conclusively answer Your Honor's question because the affidavit doesn't reflect whether it was a call-and-response. Based on what you've said there was probable cause, in your view, to have a warrant for all the family members? Well, I think the brother in particular, because he's distinguishable from the other family members because he was living with the daughter. And the question here is not just whether it was probable cause. I would be living with the daughter. Well, the other question, let me start back. Is he for sure the brother, or is he a cousin? He's a cousin. So let's quit calling him the brother. Okay, the daughter referred to her as a brother, and that's what the affidavit uses, so I just didn't want to avoid confusion. But yes, the defendant here. At least there's a close relationship, whether it's direct or indirect. That's correct. There's a familial relationship. The affidavit suggests he was considered part of the family by the daughter, and he was living with her at the time. I do think there is more reason to infer that he was involved with the shooting than other family members. I would like to turn, however, to Section 2703, if I may, because that provides a second reason why the good-faith exception applies. Section 2703 provides two mechanisms for the government to compel disclosure of this information. The government could choose to obtain a warrant, and the government could choose to obtain a court order. Here the government chose to obtain a warrant, and that's what this is. This is a Section 2703 warrant. It directs the phone company to produce these records. But the State did not rely on that. Well, the State did rely on that, Your Honor. Section 2703 occupies the field here. It's the exclusive mechanism to obtain this information and to compel the phone companies to provide it. Here the officers sought text messages in addition to the cell site information. Under 2703, they needed to ask for a warrant to get the text messages, even though they didn't need a warrant to get the cell site information. Okay. When you say they did rely on it, is there any place in the warrant that mentions the stored communications? There is not. But the question here, Your Honor, I submit, is whether a reasonable officer would have relied on the statute as authorizing his contact. Does the SCA preempt the field here so that even a State official would have to apply for a warrant under the SCA? Well, not a warrant, Your Honor. It would have to comply with the SCA, yes. The State officer wouldn't have to necessarily get a warrant because, as was the case at the time, as we argue. Does California have any comparable law? California currently has a State ECPA that wasn't in place at the time. At the time, and I'll get to it in a bit, there was some matter of State constitutional law as to whether or not there was a reasonable expectation of privacy under the State constitution for pen registers and the like. But at the time, there wasn't comparable State law. And what did California State law say at the time? California State law said at the time that in a case from the 1970s, officers needed a warrant to obtain pen register information. But I would submit that that's irrelevant here, Your Honor. That was based on the Constitution. That was based upon the State constitution. State constitution. Not the Fourth Amendment. And, of course, we have State officers here. We do have State officers here. But the question here, Your Honor, is whether a judge-made rule, which is intended to deter future violations of the Fourth Amendment, should apply here to exclude evidence in Federal court. So the State law is irrelevant to that question. The Supreme Court has made clear, for example. I'm sorry. I didn't follow. I didn't follow the argument. These were State officials, right, applying to a State judge for information that they assumed might be used, might well be used in a State prosecution. So the Feds wouldn't have anything to do with this. No, they wouldn't. Because, I mean, you're right, Your Honor. In determining the conduct itself, the officers have to comply with all the applicable law, State law and Federal law. Right. If the State constitution provided greater protection than, let's say, the SCA, then the officers might have believed that they had to get the warrant here and that they could not apply under the SCA because it would be subsumed under a broader, more restrictive provision of the California State constitution. Well, but the question here, Your Honor, is whether the exclusionary rule applies. And the Supreme Court has made clear that State law is irrelevant to that question. In Virginia v. Moore and in California v. Greenwood, the garbage case, the Court made clear that whether or not State law outlawed a practice doesn't go to the question whether a search is reasonable. Counsel, you may be right. I actually think that what I'm suggesting here is favorable to you. You seem to be resisting all help. Okay. Well, then help me out here. Because if the officers thought that they were complying with California law, they wouldn't have had any thought at all about complying with the SCA. The fact that it might have informed one's judgment if one thought about this long or if they had consulted with counsel is sort of irrelevant to the whole question. These guys were proceeding under California law, which, as you've told us, apparently had a more restrictive provision. Well, that's right. And I just think it's unclear whether or not there was no California law squarely on point with respect to the sell-side information. So I'm not saying they – the State courts did take a more restrictive version of what counts as a privacy right. But I just don't think that was relevant here. The Court may – the officers may well have been thinking about that in addition to Federal law. But I think the main question here is whether they believe that it was reasonable under the Fourth Amendment to obtain this information without a warrant. And Section 2703 spelled it out and expressly stated you can get this without a warrant. A reasonable officer would know that 2703 authorized them to obtain this information without a warrant. A reasonable officer would have relied on that statutory scheme in determining whether his conduct was authorized. So what matters here is not, Your Honor, whether it expressly cited 2703 or whether it's captioned a warrant or a court order, but rather whether it's reasonable to believe that the affidavit satisfies the statutory standard for obtaining the sell-side information. And here it does. We'll give you a few minutes. You don't have to go quite so fast. Thank you. A couple things here. You can get an SCA authorization either through a warrant or a court order. That's right. And the only thing that happened here was a warrant, correct? Yes, Your Honor. They got a warrant. They didn't get it specifically under the SCA. But it seems odd to me that you could say they got a warrant, and even if there's not probable cause under the warrant, that they would still come to good faith. But where's the question of reasonable reliance in that case? How does that figure in? Because usually we have a situation where there is no warrant, right? Right, Your Honor. So we're like in a very unusual situation here. We have a warrant. But where is the reasonable reliance when you try to invoke this exception? Right, Your Honor. And you're quite right. Usually there is a warrant. And the defendant's argument here, as Your Honor points out, is essentially that because there was a warrant, the officer should be punished. There's no dispute that if there was no warrant here, the good faith exception would apply. Defendant concedes as much, and every court to address the question has held as much. So the question here is whether somehow this takes it out of the good faith exception because the officers went above and beyond and sought a warrant that they didn't need to seek. As to your specific question about reliance, again, just to be clear, the statute has nesting requirements for what showing is required to obtain certain types of information. For things like name, address, and phone number, you don't even need a court order. And that is information that was asked for here. For records such as that at issue here, you need a court order, or you could get a warrant, and you could also get a warrant for name, address, and phone number, even though you don't need to do so. For content information like the text messages here, you have to get a warrant. So essentially all that's happening here is instead of applying for three different types of process and three different affidavits, the officers applied for a single type of process for a warrant so that it can include all of the information. The greater includes the lesser. So it could get the text messages. Sotomayor, if there is no probable cause, then you still would have to have reasonable grounds for the precise statutory requirement under the SCA, correct? I believe so, Your Honor. So I believe so. And if we were determined that that is not present here, because we do have cases that say just because you're in the family doesn't mean the whole family gets tagged with something. So if there weren't compliance with the statutory standard, then where would that leave you? Two questions. Just to make clear, yes, the statutory standard is the reasonable ground standard. That's a standard that the Supreme Court has called a gigantic departure from probable cause and has fallen well short of probable cause. There's no dispute here. The defendant does not say that it doesn't meet that standard, and for the reasons I suggested earlier, I believe it does. For the Section 2703 reliance, I do agree with Your Honor that the question is not necessarily whether it meets that standard, but whether an officer would reasonably believe, based upon the affidavit that he or she read that was submitted with the application, that that standard was satisfied. If an officer could reasonably believe that standard was satisfied, that's enough under 2703. If not, if this Court believes that an officer couldn't reasonably believe on that, I still believe that we have the Davis good-faith argument based on precedent, which I would like to get to in a minute. But I just wanted to clarify because, Judge McKeown, you did reference to the family members and the discourse holding in Grant, I assume, that suggests it's not enough. First of all, that was about probable cause and good faith. It wasn't about the Section 2703 standard. So I don't think that has anything to do with the 2703 reasonable ground standard, which is a far, far lower standard than probable cause. But I would also suggest that case is distinguishable. I mean, it's superficially similar in that it involves a family member, or at least the case discussed a family member. But the question in that case was whether there was any reasonable basis to search the dad's house for a crime believed to be committed by the son, when there was no evidence that the son was ever there, when the only evidence that the other son was ever there was six months after the murder. And we have a situation. We have no evidence that Mr. Gilton was there, right? Well, that's right. As of the time all of these papers were issued. Right. I would just say that probable cause, the Court has made clear, is a fact-specific inquiry. There's no mechanistic formula. And I would submit that this case is distinguishable because we know that he lived with their daughter. We didn't have that situation in Grant. We know we have reason to believe that more than one person was involved in the shooting. We didn't have that in Grant. We had reason to believe it was a family affair. We didn't have that in Grant. So I would suggest that it's distinguishable. And that doesn't compel any conclusion here on probable cause or good faith. But to directly answer your Court's question, it says nothing about 2703 in any event. And let me go back to a question. I'm not sure I got the answer. You may have answered it, and I didn't hear it. And that had to do with whether, in your view, there was probable cause for every family member? And were warrants issued for the cell site information for all family members? I don't know if warrants were issued for all family members. There was an exigent circumstances request made for the father's information. And the outcome of that request is included in the affidavit supporting the warrant request in this case. That's all the record reflects with respect to the other family members as far as I know. I'm not sure if there would be probable cause for all family members. I think there's likely a colorable argument for probable cause, which is all that's required under Leon. But in any event, this is different because he's the only nonminor male family member. He had a special connection to the daughter. He was living with the daughter. He likely had a special connection to the victim. So I think it's distinguishable from Your Honor's hypothetical about all the family members. I would like to turn to the Davis good faith exception. I know the Court expressly asked to us to address that question. The question under Davis is whether it's objectively reasonable to believe that warrantless collection was authorized by binding appellate precedent. And here it was authorized by both Supreme Court precedent and this Court's precedent in Forrester. So to start with the Supreme Court precedent, the decisions in Smith and Miller established bright-line rules. A person has no reasonable expectation of privacy in the business records created and controlled by a third party. In that case, bank records and phone records. And a person has no expectation of privacy in information voluntarily turned over to third parties. How do you square the statement you just made with the Supreme Court's statement in Carpenter that said it wasn't at all clear that Smith applied to this situation and it wasn't going to overrule Smith and so there was no binding precedent vis-a-vis Smith? The Supreme Court obviously declined to extend these rules to the context here, and I obviously grant that. Davis doesn't apply only when the Supreme Court expressly overrules precedent. It applies whereas here the Court declines to extend its precedent. And that is exactly what the case was like in Lustig, for example. In Lustig, the Court – this Court determined that the search of a cell phone incident to arrest, which was outlawed without a warrant in Riley, the precedents on search of incident to arrest applied there even though the Supreme Court declined to extend its precedents, even though no Supreme Court or circuit case had directly authorized the practice as here, even though the Supreme Court subsequently stated that it wouldn't apply its precedents to cell phones in particular because they're, quote, a pervasive and insistent part of daily life, which is exactly what the Court held in Carpenter. The Supreme Court in Carpenter declined to extend it to cell phones for largely the same reasons that Riley declined to extend it to cell phones, yet this Court still applied the good-faith exception. At the time, pre-Carpenter, five courts of appeals held that Smith and Miller alone did not require a warrant here. Since Carpenter, at least one court of appeals has held that Smith and Miller alone constitute binding appellate precedent under Davis, even though there was no circuit precedent on point. That's United States v. Zohaites, 901 F. 3rd. 137. And in any event, here we have another case, and that's United States v. Forrester. And that's this Court's decision that applied the bright-line rules from Smith to new electronic surveillance techniques, in that case a device that monitored the IP addresses of websites visited by the defendant. The Court held that the traditional third-party doctrine applied, even though no court had then addressed that situation. And it said that Smith established a, quote, clear line between content and non-content information held by third parties. And it applied that clear line, Your Honor, to new surveillance technology that revealed deeply personal information, including whether a defendant is visiting sex sites or gambling sites and the like. Here, just like in Forrester, the self-site information did not reveal any content information. Here, just like in Forrester, the self-site information was used by the businesses to route consumer information, which is what this Court described the IP addresses as doing in Forrester. So it was reasonable for an officer to rely on Forrester, just as it was reasonable for an officer to rely on Smith and Miller to authorize this conduct without a warrant. Thank you. I will give you some time for rebuttal. Thank you, Your Honor. Go ahead. Good morning, Your Honors. May it please the Court. I am Mark Goldversen, counsel for Appellee Antonio Gilton. Mr. Gilton's Fourth Amendment rights were violated because a warrant was issued for a self-site location information that was not supported by probable cause. The fruits of that search warrant, his self-site location information, should be suppressed in this case because there is no good faith reliance by the police either on a facially valid search warrant or a statute that was later found to be unconstitutional or on binding case law precedent that was later overturned. What's the standard review that would apply? Of course, we don't want police running around without warrants and they can do it under certain circumstances, but we seem to give a lesser standard of review if they go and get a warrant. That is correct, Your Honor. The search warrant must, the affidavit in support of the search warrant must present circumstances that establish a fair probability that evidence of a crime will be located in the place that is to be searched. There has to be a reasonable connection. I agree with Your Honor that when a district court or a reviewing court is reviewing a magistrate judge's decision regarding probable cause, there is deference given to the magistrate judge's decision and the standard of review is clear error. But the deference that is given to the lower court's decision is not boundless. Leon, the U.S. United States, excuse me, the United States Supreme Court explained that if the probable cause determination isn't supported by a substantial basis, then that decision is not entitled to deference by the reviewing court. That's precisely what the district court did in this case. It found that there was not a substantial basis in a well-reasoned and correct decision for finding a probable cause with respect to this warrant. This warrant for Antonio Gilton's cell site location information hardly mentions Mr. Gilton at all in the affidavit. The government tries to make its case for probable cause based on information that's not in the affidavit and based on speculation, not reasonable inferences. This affidavit mentions Antonio Gilton three times in innocent ways. One, not that the minor lived with him, but that she stayed with him. No details about how long she'd stayed with him, how often she stayed with him, but she stayed with him. Two, that he is what she described as her elder brother, although we know he's actually her cousin. And three, that his cell phone number was in her cell phone. There is nothing in that affidavit that places Mr. Gilton in San Francisco at the time of the homicide. There's nothing in the affidavit. Roberts. I've got a series of questions I want to ask you about that. Yes. So you are only challenging the cell site location information. That is correct. The affidavit was much broader than that and sought information that was arguably much more within the realm of privacy for Mr. Gilton, including his any text that he had exchanged with anyone and all of his call logs. So both of his incoming and his outgoing calls. You didn't seek to suppress that information. I assume because there wasn't anything that was incriminating there. My recollection is this case has been going on for a long time. My recollection, there wasn't anything at all. Okay. To suppress. But would you have the same argument if you were trying to suppress, let's suppose, his text? Do you have the same argument that you have today? I think so, yes. Okay. Because it seems to me that given the circumstances and given what they've described, even if you can't locate Mr. Gilton in San Francisco, that texting with Barry Gilton, the miner's father, might have been a very relevant thing. So, for example, it might have been very useful for the police to know whether at 1 or 1.30 on the night in question, your client, Mr. Gilton, in Los Angeles was exchanging texts with Barry over the color of the victim's car. And that might have been very incriminating evidence, even if you couldn't put Mr. Gilton at the site of the crime. I don't disagree with you that that might have been relevant evidence. The question is whether there's sufficient information in that affidavit to support that finding. Well, since we suspect that Barry was the employee of San Francisco and, therefore, might well have been in the SUV, but that there was also at least one other person in the SUV, that there's a range of people that might reasonably be suspected of being there. And this did look like a family affair. So, whether your client was in the car or communicating with people in the car might well have been relevant to the police. And here's the point that I'm driving at so that I'll then give you a full chance to respond. So, the police might well have been looking for exchanges of texts or an incoming outgoing call between, let's say, Barry and Mr. Gilton, even if he was in Los Angeles. Again, that information, incoming and outgoing calls, incoming and outgoing texts, strikes me as much closer to the privacy interests of Mr. Gilton than his cell site location information. It simply got tagged on at the end because we had another number that they were also looking for, trying to figure out whatever information they could off of that number of an unidentified person. And so, it just sort of got swept up. Your argument feels a lot more like the kind of inquiry we make in a Franks hearing than it does in these kinds of inquiries. Well, I think what's missing still from the affidavit to support the kind of inquiry you're raising here is any information about the relationship between Antonio Gilton and Barry Gilton. Where is the information in the affidavit that says they have a particularly close relationship? Where is the information that say they communicate with each other frequently or at all? Where is the information that says that Antonio Gilton knew that the minor was a prostitute or knew that the minor had a boyfriend who was her pimp or that even knew who Snead was, had ever met Snead before, had ever seen Snead before, had ever been part of any attempt to bring the minor away from Snead? All of that is missing from the affidavit. There is nothing in that affidavit that even establishes an ongoing communication or frequency. Well, except that his number is in her cell phone. In her cell phone. And she stayed with him in Los Angeles. Correct, but not in Barry Gilton's cell phone. Where is the connection? You're talking about what about texts between Barry Gilton and Antonio Gilton. Well, I don't believe they had all of Gilton's information at this time, did they? I thought that was the subject of another warrant. It is the subject of another warrant, but I think what you're saying is there's some relevance to whether to communicate. Well, I agree. It's a little bit of a broad net, but unlike the situation in Grant, which was nine months after the crime, the police are all over this within hours or days of the incident. And it does look like they've got a family affair here, because there was some suggestion that the mother might have been involved, and that maybe she was pulled out at the last minute, and somebody else may be there in her place. And it's sort of unknown, but again, doesn't seem out of the realm of possibility that it was another family member. I think what you need to also look at in thinking about this issue is the affidavit has information from a particular source that they say is credible. And that's the main source for this information, that it is a family member, and it goes so And then it says that there was another person involved. I think it's important and relevant that that source didn't say anything about Antonio Gilton. If that source has enough information to tell the officers, and then repeat it in the affidavit, that it's the father who is the shooter, that he's in a car with another person, and that the mother wanted to do it, or a female family member wanted to do it initially, and then it turned out the father did it, wouldn't that source, if Antonio Gilton had really been involved, if there was information that he was involved, wouldn't that mean that Well, there's nobody else. I agree it would have been useful, but the source did not provide any further information on that. And correct. Neither did it suggest that it was Gilton, nor did it suggest that it was not Gilton, or anyone else, for that matter. Right. But the fact that that source didn't provide any information on Antonio Gilton is what I'm saying is important. So all of your argument, counsel, I think is very well done, and I think it really goes to the question of probable cause. Let's suppose for purposes of this argument that I completely agree with you that the magistrate should not have signed this warrant. Now, what do we do with the fact that the police went to the trouble of drafting a series of warrants, trying to make sure they crossed all of their T's and dotted all their I's, didn't do so as skillfully as we on reflection years later would like. What makes this not done in good faith? Well, I think there are several reasons. First, if you look at Leon, I think that this is an affidavit that's so lacking in addition of probable cause to render official belief in its existence entirely unreasonable. And — Are you suggesting that the police suckered the district judge, the State judge, the Superior Court judge in San Francisco? I'm saying that they had a warrant that was so lacking in probable cause and that they knew it, yes. And the reason I say they knew it is because of what Inspector Watts wrote in this affidavit. This is not like an affidavit one typically sees where the officer writes at the end, based on my experience, based on what I know about the case, there is probable cause to find evidence. Let's turn to the last paragraph on the next to the last page of the warrant, because I'd like to ask you a very specific question about that. So this has a lot of waffle language in it. It begins, based on my investigation, there appears to be probable cause to believe the cell phone numbers will tend to show as possible firsthand knowledge. And you go to the next page, there's another possibly lead to the proper identity. It's — you've got a lot of probables and possibilities and maybes in there. That's what I'm focusing on. There is — there is some kind of — there is something missing here, or else we have an additional word. In the second line of that, it says, we have probable cause to believe that the cell phone numbers will tend to show as possible firsthand knowledge. We're either missing a word, or the word have has to be struck. If we're missing words, the missing words could be Mr. Gilton. Mr. Gilton and the possessor of the other phone, or that the owners of these two phones has possible firsthand knowledge. Now, if we had inserted the word Mr. Gilton, which is not at all improbable, given the way it's been drafted, it was simply omitted, because it's clear that there's an error in there. It's a grammatical mistake. Doesn't that change the argument? Well, it does. But I actually think that the first part that the Court just read goes to the other phone, because the other phone number is for the informant. I agree. I agree it's much more powerful. I'm sorry? I said that's for the informant, right? Yes, the other phone. So I think the first sentence goes to the informant's phone. Well, it certainly is more powerful as to that. But it does say phone numbers on the second line. No, no. It's clear that we have numbers. I understand what the Court's pointing out here. But the way I interpreted this is I thought the first sentence applied to the other phone, and the second sentence applied to Mr. Gilton's phone, because the cell tower – cell site tower location information would be more relevant for Mr. Gilton's phone as opposed to the source's phone, because they'd be looking at the source's phone to see who he's communicating. Of course, unless the source was in the car. Right. Or someplace nearby. Yes. But I think that they're looking to see sources of communication with the source to see who might be providing information, where the source is getting his or her information from, and therefore finding the original source of information. So I take this last section to be an indication that Inspector Watts himself did not believe that this affidavit laid out probable cause. And if he himself didn't believe it laid out probable cause, then that is an indication – I'm sorry. You really believed you didn't have probable cause and then went to a magistrate and asked for it? That's a pretty strong indictment of a police officer with anything more to say than a few difficulties in writing something very quickly. I'm not sure your argument requires that, but it's pretty strong. It seems to me that we have to go back to whether a reasonable police officer could conclude from the affidavit that the murder was part of a family affair and two people were involved and that LG was involved closely with her elder brother. We have police officers then who take a look at this and can we determine that they could act reasonably under the circumstance. Now, we wish we had lawyers to write these out, but it never happens that way. It just seems to me that you're asking a little more than the cases do for what a reasonable police officer might do under those circumstances. Well, I think that what I take from the Grant case is that there has to be a plausible connection – that's the language that's used in Grant – between the evidence sought and the location at which it's being searched. And that's what I find missing from this affidavit is the plausible connection. We're all trying to assume things or infer things that just aren't there based only on stayed with, elder brother, phone number in my phone. So if we agree with you on that, we're still not done. That's correct. I see my time's running out. Well, we ran out his time too, so we have a few more questions. I can get by the Davis binding precedent argument and I understand how you frame it and of course how the government has framed it. The question that I find really with less precedent and more troubling is the Stored Communications Act. Because in Knorr, however it's pronounced, they were talking about a statute that had later been ruled unconstitutional. We don't have that situation here. But I'm trying to understand, given what Mr. Lerman argued, how does the Stored Communications Act figure in and does it, in effect, let the officers off the hook here? Now, let me address that if I could. I understood the government's argument being that because the Stored Communications Act allowed the obtaining of this information with reasonable grounds as opposed to probable cause support or warrant, that it can be viewed that the San Francisco police reasonably relied on that. I think there were three responses. One is, obviously, they did not get an order pursuant to the Stored Communications Act. And I think that's important because, in my view, good faith reliance has both a subjective and an objective element. The subjective element is that you actually relied on the statute or the precedent or the procedure that was lawful at that time. And two, your reliance on it was objectively reasonable.  I did not see any cases, and perhaps I missed one, in which a good faith exception was based on a procedure or a rule that the police didn't actually try to follow in engaging in the conduct that they did. Number two is, I don't think this affidavit even meets the reasonable grounds standard that the affidavit is so lacking in a connection with cell site location information that that affidavit is not met. And third, and I think this is the most important reason, is that there's an exception in 2703 Subdivision D, and it says there that in the case of a state governmental authority, that's what we have here, such a court order, that's the court order without a warrant, shall not issue if prohibited by the law of such state. And we know that California did prohibit that. Okay. What did California do? What did California prohibit? What was that that California prohibited? California prohibited the obtaining of telephone records without a warrant under its Article I, Section 13. Okay. But that's a little circular because they did file for a warrant. So it looked like this was my argument with government counsel.  to get a warrant. What I'm saying, the question you asked me, Your Honor, was could there be good faith reliance on 2703 D? Right. And I'm saying it couldn't be, there can't be good faith reliance on 2703 D because they couldn't utilize that procedure. They could not get a court order based on reasonable grounds because that wasn't allowed by California state law. Now I'm losing you because would California state law allow you to get a warrant based on probable cause? Yes. Okay. So why... A valid warrant. Pardon? A valid warrant. A valid warrant, which means probable cause. Yes. So why then wouldn't the Stored Communication Act exception just tie right back into that, that you need a warrant with probable cause? As opposed to you can't get one at all. I'm not saying you can't. I was addressing the argument that because the Storage Communication Act allows you to get an order as opposed to a warrant, a court order based on reasonable grounds for self-site location information. Okay. I think I'm getting it now. What you're saying, I don't want to put words in your mouth, but I want to make sure I understand it. You're saying that there's no procedure under California law to get an order based on reasonable grounds under California law. The Constitution requires a warrant with probable cause. Right. So in other words, there's no way, I didn't mean to cut you off, Your Honor, but I was trying to say there's no way the San Francisco police could have relied in good faith on allow them to get the self-site location information on less than probable cause because that statute says it doesn't take effect if state law is different from the court order provision. Okay. Well, I want to see if my colleagues have other questions because other than that, we have given you some extended time. Sure. And so we would conclude your argument unless my colleagues have questions. No. Okay. Thank you, Your Honor. Thank you. I'd like to give the government an additional three minutes for rebuttal. Thank you, Your Honor. I appreciate the court's indulgence. Judge Bybee, if I could just pick up with the tends to show language in the affidavit. I understand it's legalese. There's reason for that legalese. Well, it's not just legalese. It's the kind of thing we use in everyday conversation. We're waffling, and it's got a lot of waffling. It has waffling, but the California Pena Code 1524, the warrant statute, requires officers to say that the evidence tends to show particular things. It parrots the statute in this case. And courts have made clear, in particular the Dorsey decision, which is a district court decision that we cite in our briefs, that words like appears to be and maybe and possibly don't undermine the probable cause argument. Probable cause is just that. It's probable cause. The magistrate makes the determination whether there's probable cause based upon the showing offered in the affidavit. And in Dorsey, the defendant said it's just that appears to be. It just said tends to show, and that's not enough. And the Court said that it is enough. And it is enough here, too. Leon has several exceptions to the exceptions, one of which is whether the magistrate was misled. The defendant never relied on the misled the magistrate argument. The defendant only relied on the so lacking in indicia of probable cause as to render official belief entirely unreasonable. I don't think there's any colorable argument here that the magistrate was misled, surely not any evidence that the magistrate was misled because the officer was more forthcoming than perhaps he had to be by couching it in the language of the statutory requirement for the warrant. So I would just argue that the only question here is whether there was a colorable argument for probable cause, whether reasonable jurists could disagree on the question whether or not there was probable cause. If so, the Leon exception applies, and it doesn't turn on whether there are words like appears to be or maybe. The second point I'd like to make in my running time is just Leon also makes quite clear. Can you get a good faith exception if all jurists would agree that it was lacking in probable cause, everybody except for the magistrate, except for the judge who signed it? Right. This Court has interpreted the Leon indicia of probable cause, except it's the exception, in two ways, colorable arguments or reasonable and competent jurists could disagree. I think the implication there is that if reasonable and competent jurists would be united that there was nothing here, I think that would mean that it doesn't satisfy the Leon exception because then it fails to meet the colorable argument standard. The Court hasn't entirely, you know, explored the nuances of that. I will say here, again, I just want to reiterate, five courts of appeals held at the time that there was no warrant required for this. I find it difficult to believe that when five courts of appeals held something, pre-Carpenter, an officer who's not a lawyer who believes the same thing is acting in a way that reasonable jurists would disagree. We have reasonable jurists, and they agreed with the officers here. So I find it hard to believe that there was no colorable argument for probable cause when you had five courts of appeals reaching the very same conclusion as here. And I would just add that, you know, Leon makes clear that the deterrent effect needs to outweigh the social cost. Here we have officers going above and beyond. They got a warrant when they didn't need to do so. Statute didn't require them to do so. Case law didn't require them to do so. I think it would be perverse under the motivations of the exclusionary rule to punish the officers for going above and beyond what was required in seeking a warrant. Thank you. Thank you both for your arguments today and also for the very helpful supplemental briefing. The case of United States v. Skilton is submitted. And thank you. We're adjourned for the morning.
judges: Wallace, McKeown, Bybee